**UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO**

| | |
|---|---|
| BROTHER TIMOTHY MARIE PIDA, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY OF BONNERS FERRY, by and through its employee, CITY POLICE OFFICER WILLIAM COWELL in his official and individual capacities, <br><br> Defendants. | Case No.: 2:17-CV-00195-REB <br><br> **MEMORANDUM DECISION AND ORDER RE:** <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **(Docket No. 16)** <br><br> **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **(Docket No. 18)** <br><br> **JOINT STIPULATED MOTION TO CONTINUE TRIAL** <br><br> **(Docket No. 30)** |

Now pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 16), Plaintiff's Motion for Partial Summary Judgment (Docket No. 18), and the parties' Joint Stipulated Motion to Continue Trial (Docket No. 30). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

This case arises out of a traffic stop that occurred in Boundary County, Idaho, on March 18, 2015. At 7:30 p.m. that evening, Defendant William Cowell, an officer with the Bonners Ferry Police Department, pulled over Plaintiff Brother Timothy Marie Pida, a Catholic Hermit, for speeding (traveling 53 mph in a 35 mph traffic zone). Greeting Officer Cowell with a "Peace

**MEMORANDUM DECISION AND ORDER - 1**

be with you officer," Plaintiff apologized and indicated that he likely did not see the multiple speed limit signs because he was talking on his cell phone and was not paying attention.

As part of the traffic stop, Officer Cowell asked Plaintiff for his driver's license, registration, and proof of insurance. According to Officer Cowell, Plaintiff "appeared to be extremely nervous" as he variously explained that he was returning (to Eureka, Montana) from Spokane, Washington; had been working with Mother Theresa's Sisters, providing aid to people who were dying; had an elderly mother with health problems; and had a brother who was a state policeman. After securing the requested information, Officer Cowell returned to his patrol vehicle and ran Plaintiff's vehicle through dispatch.

Relevant here, Officer Cowell *also* made a call to Agent Clancy Harris with the U.S. Customs and Border Patrol, asking Agent Harris if he was nearby and could respond with his police dog to perform a "canine drug sniff." Officer Cowell was suspicious of Plaintiff's behavior after being pulled over and overall appearance (Plaintiff was wearing the raiment of a Catholic Hermit); he also smelled what he believed to be the odor of marijuana and cayenne pepper (a potential masking agent) coming from Plaintiff's vehicle. Agent Harris indicated that, "if [you] can hang out, I can make it in about ten minutes." Officer Cowell agreed and began filling out an Idaho Uniform Citation for speeding.

When Agent Harris arrived on the scene approximately 12 minutes later, Officer Cowell was still in the process of completing the citation. When he finished, he exited his patrol vehicle and had the following exchange with Agent Harris:

Harris:     Hey.

Cowell:     Alright.

Harris:     How many people in there?

Cowell:     There's one.

**MEMORANDUM DECISION AND ORDER - 2**

| | |
|---|---|
| Harris: | One? |
| Cowell: | Yeah. Ok, he's Spokane to Eureka. Ummm, I'm getting an odor that, gotta faint, faint odor of green and then an odor like cayenne. |
| Harris: | Oh, ok. |
| Cowell: | The guy is a, hmm, in full Catholic priest, uh, yeah, garb. |
| Harris: | Uh huh. |
| Cowell: | He's on the phone with my dying Mother. I've been down with mother Theresa's Sisters in Spokane helping people that, that, you know, they're dying. He's nervous, he, ah, couldn't find his driver's license, ahh, my brother's a State Trooper. |
| Harris: | Really? |
| Cowell: | Yeah, things aren't adding up. |
| Harris: | Alright, I'll talk to him real quick and take the dog around and see if he detects? |

Officer Cowell then returned to Plaintiff's vehicle to give him back his information and issue the citation. Simultaneously, Agent Harris walked his dog around Plaintiff's vehicle to have the dog sniff for drugs. Officer Cowell explained to Plaintiff that he was issuing him a simple violation for speeding and went over the general protocol for either paying the fine or contesting the ticket. Officer Cowell then returned to his patrol vehicle to retrieve additional information on contacting the Boundary County Courthouse (that Officer Cowell claimed to have forgotten to originally give to Plaintiff) and, on his way back to Plaintiff's vehicle, was informed by Agent Harris that his dog did not alert to the presence of any drugs. Officer Cowell gave Plaintiff the additional information, discussing what needed to be done regarding the citation and possible court dates. When finished, Plaintiff shook Officer Cowell's hand and was free to leave.

**MEMORANDUM DECISION AND ORDER - 3**

The entire traffic stop lasted approximately 23 minutes.  Plaintiff later contested the citation and was found guilty of speeding after a trial on the merits on April 2, 2015.

Plaintiff has since filed a Complaint (and, later, a First Amended Complaint) against the City of Bonners Ferry and Officer Cowell under 42 U.S.C. § 1983, claiming that the traffic stop was unduly prolonged for a canine drug sniff in violation of the Fourth Amendment.  *See* Pl.'s First Am. Compl., ¶ 51 (Docket No. 1-3).  Plaintiff also alleges that Officer Cowell's negligence in extending a routine traffic stop for the purpose of conducting a canine drug sniff resulted in "severe scratches and gouges" in the paint of Plaintiff's vehicle (allegedly caused by Agent Harris's dog).  *See id.* at ¶¶ 26, 45, 47, & 49.  Defendants now move for summary judgment on each claim.  *See generally* Defs.' MSJ (Docket No. 16).  Plaintiff opposes these efforts, while also moving for partial summary judgment on his § 1983 claim.  *See generally* Pl.'s MPSJ (Docket No. 18).

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Civil Procedure 56 provides, in pertinent part, that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For summary judgment purposes, an issue must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation; an issue is "genuine" if it must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975); *see also British Motor. Car Distrib. v. San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989).  "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When parties submit cross motions for summary judgment, courts independently search the record for factual disputes. *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross motions for summary judgment "where both parties essentially assert that there are no material factual disputes" does not vitiate a court's responsibility to determine whether disputes as to material facts are present. *See id.*

In considering a motion for summary judgment, courts do not make findings of fact or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255. Rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

### III. ANALYSIS

### A. Officer Cowell is Entitled to Qualified Immunity on Plaintiff's § 1983 Action

In determining whether an officer is entitled to qualified immunity, courts must determine (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *See Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). Consequently, at summary judgment, an officer may be denied qualified immunity in a § 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Here, there is no dispute that Officer Cowell's initial seizure of Plaintiff (pulling him over for speeding) was based on probable cause and was concededly lawful. However, a seizure

that is lawful at its inception can nonetheless violate the Fourth Amendment if its manner of

execution unreasonably infringes interests protected by the Constitution. *See Illinois v. Caballes*,

543 U.S. 405, 407 (2005). Using a trained narcotics-detection dog (even without probable cause)

during a lawful traffic stop, does not, in and of itself, automatically implicate privacy interests.

*See id*. at 409 ("Any intrusion on respondent's privacy expectations [via canine drug sniff] does

not rise to the level of a constitutionally cognizable infringement."). But where a canine drug

sniff adds any time to an otherwise lawful traffic stop, its use must be supported by an

independent, reasonable suspicion of criminal activity. *See Rodriguez v. U.S.*, 135 S.Ct. 1609,

1614-16 (2015) (police may not extend otherwise-completed traffic stop, absent reasonable

suspicion to conduct canine drug sniff).

Therefore, the merits of each party's motion for summary judgment (at least with respect

to Plaintiff's § 1983 claim and alleged Fourth Amendment violation) depend on (1) whether

Officer Cowell prolonged Plaintiff's traffic stop to conduct a canine drug sniff and, if so, (2)

whether Officer Cowell had reasonable suspicion of criminal activity so as to justify extending

the traffic stop by using a canine drug sniff. If there is no unreasonable delay *or* Officer Cowell

had the requisite reasonable suspicion to use a canine drug sniff and, thus, delay Plaintiff's traffic

stop, Defendants prevail; conversely, if there is an unreasonable delay *and* no corresponding

reasonable suspicion, Plaintiff prevails.

At the outset, the Court cannot conclude as a matter of law that Officer Cowell had

reasonable suspicion to add time to Plaintiff's traffic stop for the purpose of conducting a canine

drug sniff. Officer Cowell admitted as much during his deposition, testifying in response to

Plaintiff's counsel's questioning:

> Q:          Okay. So you said earlier that you did not want to extend
>             the stop. I ask again in a different manner, so that perhaps
>             it's more clear this time, what is your understanding of the

**MEMORANDUM DECISION AND ORDER - 6**

current law in regard to the [Fourth] Amendment extension of a stop?

A:        That it is not to be extended beyond the reason I've conducted that stop. So if that stop includes completing a citation, it is that person is detained for the amount of time it takes to complete a citation, and issue it, barring nothing that – no other circumstances.

Q:        And to your understanding when are you allowed to extend the stop?

A:        If I've got reasonable suspicion to believe that there is criminal activity afoot.

Q:        And so you believed you had reasonable suspicion here, correct, or you wouldn't have called the dog. Right?

A:        I had suspicion to believe that there may have been criminal activity afoot, yes.

Q:        So why are you worried about extending the stop if you had reasonable suspicion?

A:        Because I did not – ask the question again. I've lost you for a second.

Q:        Were you worried about extending the stop if you were confident you had reasonable suspicion to call the dog?

A:        I'm not tracking real well apparently. Ask me the question again. Why was I – ? I'm sorry.

Q:        So you said earlier that your understanding of the [Fourth] Amendment extending a stop . . . is that you don't want to extend the stop beyond the time it generally takes to run a general traffic citation.

A:        Sure.

Q:        Which you said was 15 to 20 minutes. But you also have told me that you had reasonable suspicion.

A:        I had suspicion that was to a point where I would – I wanted a drug dog at the scene. If that drug dog could not have made it in that time, *I didn't feel I had enough reasonable suspicion to extend the stop beyond what it would have taken*

> *for that*.  Say if that dog had been up at the border or over on the Yaak, *I didn't feel I had enough reasonable suspicion to detain Mr. Pida beyond the time it took to complete that citation*.  So I had suspicion enough to call the dog because I wanted a sniff conducted of the vehicle.

> Q:    And so you weren't worried about extending the stop?

> A:    Well, certainly I was.  I just explained.  *I didn't feel I had suspicion – enough suspicion to extend the stop beyond the time it took to complete the citation, and issue it*.

Cowell Dep. at 43:25-46:8, attached as Ex. C to Anderson Aff. (Docket No. 18-2) (emphasis added).  In other words, absent reasonable suspicion, the parties' motions (and overall thrust of Plaintiff's case) turn on whether Officer Cowell delayed Plaintiff's traffic stop.  On this lynchpin issue, the recent decision in *Oquendo v. City of Boise*, 2017 WL 874569 (D. Idaho 2017), is particularly instructive.

In *Oquendo*, the defendant police officers pulled over the plaintiff's pickup truck for having a broken tail light.  *See id*. at *1.  As part of the stop, the officers asked the plaintiff if she would consent to a search of the truck; she refused.  *See id*.  The officers then requested a K-9 unit to conduct a canine drug sniff of the truck and waited in their patrol car for the K-9 unit to arrive (about 12 minutes) – during that time, they were not completing the citation for the broken tail light.  *See id*. at *1-2.  After the K-9 unit arrived and the police dog was allowed to pee, the police officers approached the truck to remove its occupants (including the two plaintiffs) so that the drug sniff could proceed.  *See id*. at *2 ("Officer Martinez had not completed the citation for the broken tail light and so their purpose in approaching the truck was not to serve the citation [but,] [r]ather, their sole purpose was to remove the truck's occupants so that a drug sniff could be completed.").  The canine drug sniff alone contributed to a 5-minute delay in the traffic stop (3 minutes for the search itself since "the purpose of the stop – to issue a citation – had been abandoned"; and the 2 minutes it took for the police dog to pee).  *Id*.  And, because the police

**MEMORANDUM DECISION AND ORDER - 8**

officers delayed writing up the citation until sometime after the canine drug sniff was over, the traffic stop was further prolonged by 7 to 12 minutes. *See id*. at *3. All told, the traffic stop was extended by about 12 to 17 minutes. *See id*.

The plaintiffs then filed a § 1983 action, similarly alleging that their constitutional rights were violated given that "the traffic stop was unduly prolonged for a drug-dog sniff in violation of the Fourth Amendment (among several other alleged constitutional deprivations stemming from the police officers' conduct in extricating the plaintiffs' from the truck). *Id*. at *4. In turn, the police officers moved for summary judgment, seeking a ruling that they had qualified immunity from any claim that the traffic stop was improperly prolonged. *See id*. at *5. The plaintiffs filed a cross-motion summary judgment of their own, seeking the opposite ruling – that their constitutional rights were violated when the traffic stop was improperly prolonged for the canine drug sniff. *See id*.

As to the first question in the qualified immunity analysis, Chief U.S. District Judge B. Lynn Winmill found that a traffic stop prolonged by 12 to 17 minutes violated the plaintiffs' Fourth Amendment rights. *See id*. at *6. And, as to the second question of whether that right was clearly established at the time of the incident, Judge Winmill found that a reasonable officer would have known that a traffic stop prolonged by 12 to 17 minutes (and without independent, reasonable suspicion of criminal activity) amounted to a constitutional violation. *See id*. at *7. *Oquendo's* rationale is persuasive and applies equally here – except to a different result, for the following reasons.

To begin, during oral argument, Plaintiff's counsel stated in no uncertain terms that the citation "should have been written in 10 to 15 minutes" – implying that the additional time it took Officer Cowell to actually issue the citation to Plaintiff (approximately 23 minutes) violates the Fourth Amendment (again, assuming no independent, reasonable suspicion). In this setting,

**MEMORANDUM DECISION AND ORDER - 9**

the Court agrees. To be sure, *any* delay under such circumstances equals a Fourth Amendment violation. *See Rodriguez*, 135 S.Ct. at 1612 ("We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."). Therefore, on this first question in the qualified immunity analysis, the instant action squares with *Oquendo*.

But importantly, the decision in *Rodriguez* came after the at-issue traffic stop and, as a result, cannot apply to inform the equally-necessary second question in the qualified immunity analysis – that is, was Plaintiff's constitutional right to not have the traffic stop prolonged by a canine drug sniff clearly established at the time of the incident such that Officer Cowell would have understood his conduct during the traffic stop to be unlawful? Judge Winmill confronted this same scenario in *Oquendo* (the traffic stop preceded *Rodriguez*), forcing him to scrutinize the case law in existence *as of the time* of the plaintiff's traffic stop there. *See Oquendo*, 2017 WL 874569 at *6 ("While the drug-dog sniff in this case violated *Rodriguez*, that case was not decided until 2015, two years after the incident in question here, which occurred in 2013."). In this respect, Judge Winmill noted:

> While the Idaho Court of Appeals decision in [*State of Idaho v.*] *Aguirre*[, 112 P.2d 848 (Id. Ct. App. 2005)] was decided in 2005, several other cases did allow for a brief delay of perhaps 2 to 8 minutes.
>
> For example, the Eighth Circuit decision that was reversed by *Rodriguez* noted that "we have repeatedly upheld dog sniffs that were conducted minutes after the traffic stop concluded." *U.S. v. Rodriguez*, 741 F.3d 905, 907 (8th Cir. 2014). That statement is followed by a list of cases holding that brief delays were "a de minimis intrusion on personal liberty." *Id*. The delays in these cases were between 2 and 4 minutes (with one case involving a delay of "well under 10 minutes"). *Id*.
>
> For example, the list included *U.S. v. Alexander*, 448 F.3d 1014, 1017 (9th Cir. 2006), a case decided after *Caballes* but before *Rodriguez* holding (without making any finding of reasonable suspicion) that prolonging a traffic stop for 4 minutes beyond its completion was not a Fourth Amendment violation. In *Rodriguez* itself, the Eighth Circuit held that a 7 or 8-minute delay for a drug-dog sniff was de minimis and without constitutional significance. *Rodriguez*, 741 F.3d at 907.

**MEMORANDUM DECISION AND ORDER - 10**

The case law in the Ninth Circuit was somewhat similar prior to *Rodriguez*. In *U.S. v. Turvin*, 517 F.3d 1097, 1102-03 (9ᵗʰ Cir. 2008), the Circuit held that a traffic stop may be prolonged for a drug-dog sniff, even in the absence of reasonable suspicion, when there is only a "brief" delay, which in that case was 4 minutes. *Id*. at 1103-04; *see also U.S. v. Johnson*, 2015 WL 875016 at *12 (D. Nevada 2015) (holding that delay of "four to five minutes . . . constituted no more than a de minimis intrusion on Defendant's . . . Fourth Amendment rights"). *Turvin* turned away from holding a stopwatch to police conduct, citing with approval cases from other jurisdictions holding that "police are not constitutionally required to move at top speed or as fast as possible." *Id*. at p. 1102 (citing *U.S. v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11ᵗʰ Cir. 2005)). *Turvin* ultimately concluded that "[r]ather than bright-line simplification, the Constitution requires a reasonableness analysis."

Some of these pre-*Rodriguez* cases essentially borrowed a line of analysis from *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). That case found that requiring a driver to exit his vehicle after being lawfully stopped was a mere "de minimis" intrusion that did not violate the Fourth Amendment. This analysis was extended by some pre-*Rodriguez* cases to uphold drug-dog sniffs causing only brief delays because this intrusion was de minimis.

*These cases approved delays of between 2 and 8 minutes. The delay here was between 12 and 17 minutes, according to the officers' own testimony. The parties cite no case – and the Court has been unable to locate any case – that approved a 12 to 17-minute delay. Accordingly, the Court finds that any reasonable officer would have known that the traffic stop here was prolonged even beyond the brief time allowed by the law prior to Rodriguez.*

*Id*. at *6-7 (emphasis added) (footnotes omitted). Judge Winmill accordingly found that the police officers were "not entitled to qualified immunity for prolonging the traffic stop to conduct a drug-dog sniff," denied the police officers' motion for summary judgment on this point, and granted the plaintiff's cross-motion for summary on this point. *Id*. at *7, *11.

The obvious take-a-way from *Oquendo* is that, pre-*Rodriguez*, delays between 2 and 8 minutes (even without independent, reasonable suspicion) were regarded as de minimis. Thus, even when assuming that the citation should have been written within 15 minutes (as Plaintiff's counsel argues), and considering the fact that the entire traffic stop lasted approximately 23 minutes, the intervening 8-minute delay is likewise understood to be de minimis to the point that Officer Cowell would not have understood that his conduct was unlawful vis à vis Plaintiff's

**MEMORANDUM DECISION AND ORDER - 11**

traffic stop.  There is no question that space exists to argue that Officer Cowell's conduct could

have been more urgent and swift.  It is even possible to argue that Officer Cowell was

deliberately "sandbagging" so as to conveniently finish the citation upon Officer Harris's arrival

with the police dog, just before re-approaching Plaintiff's vehicle.  But the approximately 8-

minute span that portrays either situation is, as a matter of law, de minimis as of the time of

Plaintiff's traffic stop – indeed, had the traffic stop occurred after *Rodriguez*, Plaintiff's § 1983

claim would naturally have more traction.  In this sense, and on the second question in the

qualified immunity analysis, the instant action departs from *Oquendo*.  Qualified immunity

applies to preclude Plaintiff's § 1983 claim, with Defendants' Motion for Summary Judgment

granted and Plaintiff's Motion for Partial Summary Judgment denied in this respect.

**B.      Questions of Fact Populate the Extent of Office Cowell's Control Over Agent Harris
and/or the Police Dog**

Plaintiff's negligence claim is premised upon the allegation that Agent Harris's police

dog damaged Plaintiff's vehicle with its claws.  In support of their Motion for Summary

Judgment, Defendants disclaim any responsibility for Agent Harris or the police dog, arguing:

> The canine unit that responded was not a team employed or insured by the City of
> Bonners Ferry or its Police Department.  Agent Harris and his canine, Bartje, were
> agents and employees of the United States Border Patrol.  The Bonners Ferry Police
> Department and Sgt. Cowell had no supervisory authority over Agent Harris or
> Bartje.  Sgt. Cowell had no control over Bartje and did not participate in the search
> of the vehicle in any manner.  Bartje was on leash and was controlled by Agent
> Harris during the drug-dog sniff.  Sgt. Cowell was busy issuing the citation to Pida
> while Agent Harris and Bartje searched the vehicle.  Because Sgt. Cowell had no
> authority over Bartje and did not participate in the search, Sgt. Cowell owed no
> duty to prevent the alleged damage done by the canine.

Mem. in Supp. of MSJ, p. 19 (Docket No. 16-1) (internal citations omitted).  Similarly, during

his deposition, Officer Cowell testified in response to Defendants' counsel's questions:

> Q:          Did you at any time see the canine jump onto Mr. Pida's
>             vehicle?

**MEMORANDUM DECISION AND ORDER - 12**

A:                We're going two and a half years.  I don't remember.

Q:                Could you see that on the video that was shown?  Did you see anywhere on the video where the dog jumped on top of the vehicle or scratched the vehicle?

A:                No.

Q:                When a canine unit is called out, do you have any control over the dog that is there on scene?

A:                No.

Q:                In this case did Agent Harris have his canine on a leash?

A:                I don't remember.

Q:                Did you have any authority over the canine to command it to do something other than or the same thing as the canine handler?

A:                No.

Q:                Do you have any control over this dog whatsoever that's on scene with you?

A:                No.

Q:                Who has control over the canine?

A:                The trained handler, in this case the federal agent Clancy Harris.

Q:                If you were to give the dog a command, do you believe it would have obeyed you?

A:                No.

Q:                I think you were asked at the beginning of your deposition whether or not you transferred control over the scene when Agent Harris arrived.  Was there any transfer of authority at that time?

A:                From me to him?

Q:                From you to Agent Harris.

A:          No.

Q:          Did you have authority to stop the dog at any time?

A:          I had the authority to make the request/

Q:          During your career where you requested other drug dogs out onto the scene, have you had any control over those drug dogs?

A:          No.

Cowell Dep. at 84:1-85:18, attached as Ex. C to Erbland Aff. (Docket No. 16-6).

But this is arguably inconsistent with what Officer Cowell stated earlier in his deposition

(this time in response to Plaintiff's counsel's questions), testifying:

Q:          Okay. And so the solicited canine enforcement teams, I believe you told me earlier, but so when they come in you retain control of the scene the entire time while the handlers do their thing?

A:          Correct.

Q:          And so you could intervene and stop a handler from doing their thing at any point, correct?

A:          Correct.

Cowell Dep. at 22:7-16, attached as Ex. E to Anderson Aff. (Docket No. 20-2).

At this procedural juncture, the Court draws no meaningful distinction between Officer

Cowell's admitted control of the scene, but claimed simultaneous lack of control over the police

dog while at that same scene. Suffice it to say, the conflicting factual statements concerning the

level of control Officer Cowell had over Agent Harris and the police dog at the time he

conducted Plaintiff's traffic stop speak to the duty and breach elements of Plaintiff's negligence

claim – with the issue of damages similarly factually-dependent (the video of Plaintiff's traffic

stop includes audio from which it could be argued that the police dog scratched Plaintiff's

vehicle while conducting the canine drug sniff). Because factual disputes orbit these questions, it

**MEMORANDUM DECISION AND ORDER - 14**

cannot be said that Defendants are insulated from Plaintiff's negligence claim as a matter of law. Defendants' Motion for Summary Judgment is denied in this respect.

## C.     The Trial Date Will Not Be Continued

Trial is currently set for June 18, 2018, with a pre-trial conference set to take place on June 7, 2018. In preparation for the pre-trail conference, the parties were ordered (1) to meet on May 14, 2018 to "communicate and reach agreement on as many items as possible – including stipulations related to the parties' proposed exhibits," (2) file witness lists, trial briefs, exhibit lists and exhibits, jury instructions, and proposed voir dire by May 18, 2018, and (3) file motions in limine by May 22, 2018. Order Re-Setting Trial, pp. 2-3 (Docket No. 27). The parties have since moved to continue the trial date, reasoning that, at the time of their request, their motions for summary judgment were pending.

Those motions are now resolved within this Memorandum Decision and Order. Moreover, those motions are resolved in such a way that the issues for trial are significantly reduced – only Plaintiff's negligence claim remains. With this reality in mind, the trial date and pre-trial conference will not be continued. The parties' Joint Stipulated Motion to Continue Trial (Docket No. 30) is denied.

Even so, the Court understands the parties' recent hesitancy to proceed with the above-stated deadlines in light of any ambiguity attendant to the up-to-this-point pending motions and, with this in mind, outlines the following deadlines moving forward:

- The parties shall meet on **May 18, 2018**.

- The parties shall file witness lists, trial briefs, exhibit lists and exhibits, jury instructions, and proposed voir dire by **May 23, 2018**.

- The parties shall file motions in limine by **May 30, 2018**; responses to any motions in limine shall be filed by **June 4, 2018**; and replies in support of any motion in limine shall be filed by **June 6, 2018**.

**MEMORANDUM DECISION AND ORDER - 15**

- The parties shall notify the Court on or before **May 22, 2018** that the case has either settled or will definitely go to trial.

The Order Re-Setting Trial (Docket No. 27) shall remain in-effect, to the extent it informs the particular protocol for these events.

## IV. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Docket No. 16) is GRANTED, in part, and DENIED, in part, as follows:

    a. Defendant Cowell is entitled to qualified immunity on Plaintiff's § 1983 claim. Defendants' Motion for Summary Judgment (Docket No. 16) is GRANTED in this respect.

    b. Plaintiff's negligence claim is not dismissed. Defendants' Motion for Summary Judgment (Docket No. 16) is DENIED in this respect.

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 18) is DENIED.

3. The parties' Joint Stipulated Motion to Continue Trial (Docket No. 30) is DENIED.

DATED: May 15, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge